IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| QUINTON HARRIS, GEOFFREY MILLER, NORMAN MOUNT, SCOTT ZINN, THOMAS TAYLOR, and JOHN BAKER,<br><br>        Plaintiffs,<br><br>    vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>        Defendant. | **8:16CV381**<br><br><br>**ORDER** |

This matter is before the Court on Defendant's Motion to Sever Plaintiffs' Claims (Filing No. 331).  For the reasons explained below, the motion will be granted.

## BACKGROUND

An amended complaint alleging fourteen causes of action was filed by Plaintiffs Quinton Harris ("Harris"), John Baker ("Baker"), Geoffrey Miller ("Miller), Norman Mount ("Mount"), Thomas Taylor ("Taylor"), and Scott Zinn ("Zinn") (collectively, "Plaintiffs") on February 19, 2016.  (Filing No. 20.)  Plaintiffs, who are all current or former employees of Defendant, contend that Defendant's fitness-for-duty policy unlawfully discriminates against employees based on disabilities and genetic information.   Under Defendant's fitness-for-duty program, employees holding certain positions are required to disclose specified heath conditions and reportable heath events so Defendant can evaluate the employee's fitness for duty.  These events generally include cardiovascular conditions, seizures or loss of consciousness, significant vision or hearing changes, diabetes treated with insulin, and sleep apnea.   Plaintiffs maintain they were "excluded from their positions on the basis of disabilities that had no effect on their ability to perform the essential functions of their jobs." (Filing No. 20.)

Plaintiffs have asserted claims under the Americans with Disabilities Act ("ADA"): (1) disparate treatment—alleging that through its fitness-for-duty program, Defendant engaged in a pattern or practice of discrimination by implementing qualification standards and other criteria that screen out individuals with disabilities; (2) disparate impact—alleging that the fitness-for-duty program had an adverse impact on individuals with disabilities by, for example, screening them out or tending to screen them out of work; and (3) unlawful medical inquiry—alleging violations of 42 U.S.C. § 12112(d)(4)(A), which provides that an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." Plaintiffs Baker, Miller, Mount, Taylor, and Zinn also assert claims under the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff *et seq*. Additionally, four plaintiffs allege claims under the laws of their respective home states. (Filing No. 20.)

On August 17, 2018, Plaintiffs sought class certification on the ADA disparate treatment claim. (Filing No. 240.) A class was certified under Federal Rule of Civil Procedure 23 on February 5, 2019. (Filing No. 307.) Defendant appealed the order granting class certification to the Eighth Circuit Court of Appeals, arguing Plaintiff did not meet Rule 23(b)(2)'s cohesiveness requirement or Rule 23(b)(3)'s predominance and superiority requirement.[1] *Harris v. Union Pacific Railroad Company*, 953 F.3d 1030 (8th Cir. 2020). The Eighth Circuit Court of Appeals reversed class certification, finding that the "individualized inquiries in this case cannot be addressed in a manner consistent with Rule 23." *Id*. at 1035. The Eighth Circuit concluded that the district court cannot determine whether the fitness-for-duty policy "constituted a pattern or practice of unlawful discrimination without considering whether the policy is job-related for each of over 650 positions in question and whether the policy is consistent with business necessity in each situation." *Id*. The Eighth Circuit stated that in making this determination, the district court "would have to consider whether [Defendant's] policy is job-related and consistent with business

---

[1] "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. at 362.

necessity in light of the medical conditions to which it applies," which would require "answering many individual questions." *Id.* at 1036.

## DISCUSSION

Defendant requests that the Court sever Plaintiffs' claims into separate, single-plaintiff actions. Defendant contends joinder is improper under Federal Rule of Civil Procedure 20(a) because Plaintiffs' claims neither arise out of the same transaction or occurrence, nor present common questions of law or fact. Defendant argues Plaintiffs' claims involve six different factual circumstances, with each requiring individualized proof and defenses. Plaintiffs contend, however, that each of their claims depend upon their ability to demonstrate that they were wronged as a result of Defendant's fitness-for-duty policy and, therefore, the requirements for joinder under Rule 20(a) are satisfied. Plaintiffs claim it is irrelevant that each of them suffered from different disabilities, worked in different jobs, and for different supervisors because each of their removals were decisions to remove a worker from service based on a reportable health event.

Under Federal Rule of Civil Procedure 20(a), persons may join in one action as plaintiffs if two requirements are satisfied: (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20. The appropriate remedy for improper joinder of parties is for the court to "drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21.

### A.    Same Transaction or Occurrence

"The Eighth Circuit has embraced a liberal reading of the same transaction and occurrence language, finding it permits joinder of all reasonably related claims for relief by or against different parties." *Tridle v. Union Pacific Railroad Company*, No. 8:08CV470, 2009 WL 1783558, at *2 (D. Neb. June 22, 2009) (internal quotation omitted). "[A]ll logically related events entitling a person to institute legal action against another generally are regarded as comprising a transaction or occurrence." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). However, "[i]n ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. No hard and fast rules have been established under the rule." *Id.* at 1333.

3

The Court finds Plaintiffs cannot satisfy the same transaction or occurrence requirement for joinder under the circumstances of this case. Although each of the individual plaintiff's claims are rooted in allegations that Defendant's fitness-for-duty policy is discriminatory, the claims nevertheless "hinge on distinct facts that are unique to each plaintiff and, thus, do not arise out of the same transaction or occurrence." *Payne v. Grant County, Okla.*, No. CIV–14–362–M, 2014 WL 3349617, at *2 (W.D. Okla. July 8, 2014). *See also Corley v. Google, Inc.*, 316 F.R.D. 277, 285 (N.D. Cal. 2016) ("[T]he transaction or occurrence requirement is not met where plaintiffs would have to prove their claims or defendants would have to litigate their defenses on an individualized basis").

The Eighth Circuit has already concluded that the resolution of Plaintiffs' ADA disparate treatment claims will require individualized determinations as to whether each plaintiff's fitness-for-duty evaluation was job-related and consistent with business necessity. *Harris*, 953 F.3d at 1035. The Eighth Circuit found the district court will have to assess whether the fitness-for-duty policy is "job-related and consistent with business necessity in light of the medical conditions to which it applies." *Id.* at 1036. The district court will also have to "consider the unique circumstances of each position in question to determine whether the policy is unlawfully discriminatory." *Id.* at 1037. Therefore, the determination of whether the fitness-for-duty policy is job-related and consistent with business necessity will require an examination of each plaintiff's medical condition, position, and job responsibilities.

Here, Plaintiffs have distinct medical conditions and were subject to fitness-for-duty evaluations for different reasons. Plaintiffs worked in separate locations and held different positions with distinct job duties. Harris suffers from epilepsy and worked as a mechanical service operator in Little Rock, Arkansas. (Filing No. 243.) Harris' position required him to move locomotives, perform service work, and operate forklifts. (*Id.*) Miller, who suffered from cardiomyopathy, was a signalman in Delta, Ohio. (Filing No. 244.) Miller's job duties included digging out and placing signal cabins, running cable and wire, and operating backhoes and heavy trucks. (*Id.*) Mount, who has a pacemaker, was employed as a signal maintainer in Illinois. (Filing No. 245.) Mount's position required him to maintain signal equipment and address equipment-related safety issues. (*Id.*) Taylor worked as a signalman in Berkley, Illinois. (Filing No. 246.) Taylor, who suffers from epilepsy, was responsible for the installation, inspection, maintenance,

4

and repair of signal equipment.  (*Id*.)  Zinn, who was employed by Defendant as a ballast tamper operator in Wilcox, Arizona, suffers from post-traumatic stress disorder and substance abuse problems.  (Filing No. 247.)  Zinn's responsibilities as a ballast tamper included the operation of on-track machinery.  (*Id*.)  Baker worked as a holster in Little Rock, Arkansas.  (Filing No. 242.)  His position involved attending to switches in the rail yard, breaking down trains, and switching trains from one track to another.  (*Id*.)  Baker was subject to a fitness-for-duty evaluation after experiencing syncopal episodes.  (*Id*.)  The factual differences between each of the plaintiff's situations are legally significant and resolution of each plaintiff's claims will require an individualized analysis.

Like Plaintiffs' ADA disparate treatment claims, the other claims will involve individualized elements of proof.  For instance, Plaintiffs' ADA claims will also require each plaintiff to offer individualized proof that he had a disability and was qualified[2] under the ADA.  *See Tramp v. Assoc. Underwriters, Inc.*, 768 F.3d 793, 804 (8th Cir. 2014) ("Though the ADAAA makes it easier to prove a disability, it does not absolve a party from proving one."); *Hutchinson v. United Parcel Serv., Inc.*, 883 F. Supp. 379, 398 (N.D. Iowa 1995) (stating that the ADA requires "an individualized assessment of [an employee's] capacity to perform the essential functions of her job").  The issue of whether a reasonable accommodation could have been made is also a "highly fact-specific inquiry that depends on the circumstances of each case."  *Crowder v. City of Manila, Arkansas*, 796 F. App'x 325, 326 (8th Cir. 2020).  Moreover, the unlawful medical inquiry and GINA claims require individualized proof of a tangible injury or injury-in-fact. *See Higgins v. Union Pac. R.C. Co.*, 303 F.Supp.3d 945, 962 (D. Neb. 2018).  Plaintiffs cannot solely rely upon an alleged discriminatory policy to establish their claims.

Because evaluation of Plaintiffs' claims and Defendant's defenses will require many necessary, individualized assessments, Rule 20's single transaction or occurrence requirement is not satisfied. Here, the mere allegation of a discriminatory policy does not support joinder. *See McDowell v. Morgan Stanley & Co.*, 645 F.Supp.2d 690, 695 (N.D. Ill. 2009) (granting motion to sever, reasoning "[t]hough Morgan Stanley's alleged discriminatory conduct may have occurred because of a company-wide policy, that conduct was rooted in individual decisions, made by

---

[2] A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

different supervisors, at different times, and in four different offices"). Accordingly, severance is warranted.

### B.      Common Question of Law or Fact

Even if Plaintiffs could satisfy the same transaction of occurrence requirement of Rule 20, severance would nevertheless be appropriate as there is no indication that "a question of law or fact common to all the parties will arise in the action," as is also required for joinder under Rule 20. *Mosley v. General Motors Corp*, 497 F.2d 1330, 1334 (8th Cir. 1974). Plaintiffs contend the common question of law or fact applicable to each of the claims in this action, including those under the ADA, GINA, and state law, is whether Defendant's fitness-for-duty policy is discriminatory. Plaintiffs maintain the fact that their claims will require individual elements of proof is not grounds for severance.

After careful consideration, the Court finds Plaintiffs' claims do not share common questions of law or fact. Although each plaintiff was evaluated for fitness for duty, they were each evaluated for a different reason. Plaintiffs suffered from varying medical conditions and held different positions with different job responsibilities. They also worked in different locations. The factual differences between each plaintiff's situation will impact, for example, the determination of whether Defendant could make reasonable accommodations for a given plaintiff due to that plaintiff's medical condition and job functions. The unique assessments necessary to evaluate each plaintiff's claim make joinder improper.

Plaintiffs' assertion of claims under the same laws does not automatically establish a common question of law. *See Smith v. Planned Parenthood of St. Louis Region*, 225 F.R.D. 233, 246 (E.D. Mo. 2004) ("[T]he mere fact that [the plaintiffs'] claims arise under the same law does not necessarily establish a common question of law or fact".). Moreover, Plaintiffs' claims do not all overlap. Plaintiffs Baker, Miller, Mount, Taylor, and Zinn assert claims under GINA and four of the plaintiffs allege claims under the laws of their respective home states. Because Plaintiffs' claims do not share common questions of law or fact, the motion to sever will be granted.

C.      **Jury Confusion and Prejudice**

Even if the requirements of Rule 20 could be satisfied, severance is nonetheless appropriate.  "[D]istrict courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness, even where standard for joinder under Rule 20 of the Federal Rules of Civil Procedure is otherwise met."  *Black Elk v. Roy*, No. 18-CV-3255, 2019 WL 885641, at *1 (D. Minn. Feb. 5, 2019) (quotation omitted).  *See also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 615, 521 (5th Cir. 2010) ("[D]istrict courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims.").  Based on these considerations, the Court finds severance warranted.

If Plaintiffs' claims were tried together, the risk of jury confusion and prejudice to Defendant—and potentially individual plaintiffs—would be significant given the factual and legal differences between each plaintiff's claims.  In evaluating the claims, the jury would be required to determine the essential functions of six jobs and evaluate whether six individuals with different medical conditions could perform his respective job.  The jury would need to understand each individual plaintiff's job responsibilities and work history.  The jury would also be expected to understand each plaintiff's medical condition and the limitations caused by that condition.  To do so, the jury would have to consider evidence related to each specific plaintiff.  Such evidence would include medical records, employment records, and testimony from treating physicians, experts and other witnesses.  The jury would then need to compartmentalize this evidence for each individual plaintiff.  This would be an extremely confusing and difficult undertaking.

As recognized by other courts, in situations such as this where evidence is highly individualized, the risk of jury confusion and prejudice is significant.  "The jury may simply resolve the confusion by considering all the evidence to pertain to all the plaintiffs' claims, even when it is relevant to only one plaintiff's case."  *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 518 (N.D. Ill. 2000).  *See also Grayson v. K-Mart Corp*, 849 F. Supp. 785, 790 (N.D. Ga. 1994) ("There is a tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus, prejudicing defendant with respect to the other plaintiffs' claims.");  *Weir v. Litton Bionetics, Inc.*, Civ. No. H–85–2545, 1986 WL 11608, at *6-7 (D. Md.

May 29, 1986) (granting motion to sever stating that "in view of the different facts which are pertinent to each of [the] claims, defendant would suffer prejudice if the claims were tried together"). The Court concludes that due to the number of facts that are only relevant to individual plaintiff's claims, jury confusion and prejudice would result if the claims were tried together.

Plaintiffs contend severance would result in duplicative discovery and motion practice. Plaintiffs also maintain that severance is premature and should not be considered until after the close of discovery and resolution of summary judgment. Plaintiffs argue that proper evaluation of the risks of jury confusion and prejudice can only occur when it is known which claims will proceed to trial. The Court finds Plaintiffs' arguments unconvincing.

This case was filed on November 25, 2015 and the amended complaint was filed on February 19, 2016. Since that time, a significant amount of discovery has taken place. To the extent some discovery remains, it is probable, based upon the claims asserted, that the discovery is plaintiff-specific. To the extent some remaining discovery relates to all Plaintiffs' claims, counsel may coordinate this discovery to prevent duplication. Moreover, because the evidence that will be necessary in motion practice will be largely individualized and plaintiff-specific, motion practice will not be complicated through severance. To the contrary, separate summary judgment briefing for each plaintiff's claims may clarify issues as the briefing will be more focused and hopefully more succinct. The same is true regarding the presentation of evidence at trial. Although certain evidence may need to be offered at each individual trial, any inconvenience which may be caused by doing so is outweighed by the confusion to the jury and prejudice that would result from proceeding jointly with Plaintiffs' claims.

Based on the facts and claims presented in this case, the Court finds the prerequisites for joinder under Rule 20(a) have not been satisfied. Further, the Court finds that allowing Plaintiffs' claims to proceed together would lead to jury confusion and prejudice. Accordingly, the Court will sever Plaintiffs' claims and allow each plaintiff to proceed in a separate action.

**IT IS ORDERED**:

1.      Defendant's Motion to Sever Plaintiffs' Claims (Filing No. 331) is granted. Plaintiffs will be required to prosecute their claims in separate actions.

2.      The Clerk of Court is directed to modify the docket sheet to reflect that Quinton Harris is the plaintiff in this case.  The Clerk of Court shall then open five new case files which shall be captioned to reflect that that each plaintiff is proceeding individually.  The Clerk of Court shall copy all docket entries from the present file into each of the new case files and docket this Order in all cases.  These cases should be denoted as being related and be assigned to the same judges.

3.      Each plaintiff shall file an amended complaint in his respective action by August 18, 2020. Each amended complaint must be specific to the claims of only the named plaintiff in that case.

4.      Proposed case progression deadlines shall be submitted to bazis@ned.uscourts.gov. in each case within fourteen days of submission of the answer.

Dated this 5th day of August, 2020.

BY THE COURT:


s/ Susan M. Bazis
United States Magistrate Judge