IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN BAKER,<br><br>    Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>    Defendant. | 8:20CV315<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the plaintiff's renewed motion for new trial or to set aside the verdict. Filing No. 491.[1] This is an action for disability discrimination in employment brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq.* ("ADA"). Baker's claims for disability discrimination under a disparate treatment theory and his claim for failure to accommodate were tried to the jury and his claim for disability discrimination under a disparate impact theory was tried to the Court. The jury returned a verdict in favor of the defendant on the plaintiff's disparate treatment and failure to accommodate claims.

The plaintiff moves for a new trial, contending that the jury's answers to special interrogatories regarding Baker's record of, and perceived, disability discrimination are contrary to the great weight of the evidence, justifying a new trial. He also challenges the Court's jury instructions, arguing the instructions caused the jury to misallocate the burdens of proof on the plaintiff's prima facie case and on the defendant's direct threat defense. Baker argues that to the extent that the jury may have determined that he was not qualified, it would have misapplied the burdens of proof. Specifically, he contends

---

[1] At the close of evidence, the Court took the parties' Fed. R. Civ. P. 50(a) motion for a directed verdict or judgment as a matter of law under advisement. This order covers those motions as well.

that the principal argument made by Union Pacific to justify the finding against Mr. Baker—the risk of future syncopal events—was not a part of his prima facie case, but rather goes to the defendant's direct threat affirmative defense.

I. BACKGROUND

In order to find in favor of Baker's on his discrimination claims based on a record of disability and/or a perceived disability, the jury was instructed that it must find the plaintiff had proved the essential elements of each claim, as follows:

> 1. The plaintiff had a record of [or was regarded as having] a physical or mental impairment of syncope;
>
> 2. The defendant placed work restrictions on the plaintiff and did not allow him to return to his job; and
>
> 3. The plaintiff could have performed the essential functions (as explained in Instruction No. 17) of his Switchman/Hostler job, with or without accommodation, at the time the defendant placed work restrictions on him and did not allow him to return to his job;
>
> 4. The plaintiff's record of [or being regarded as having a] disability was the "but-for" cause (as defined in Instruction No. 18).

Filing No. 478, Initial Jury Instructions, Instruction Nos. 13A and 14.  The jury was further instructed that in order to find in favor of the plaintiff, it must also find "the defendant [had] not proved the defense of direct threat (as submitted in Instruction No. 21B)." *Id.*

In Instruction No. 17, the jury was instructed to consider numerous factors to determine whether a job function or task was essential.[2]  *Id.*, Instruction No. 17. Instruction No. 21B provided:

---

[2] The jury was asked to consider the following factors:

> (1) the employer's judgment as to which functions of the job are essential; (2) written job descriptions; (3) the amount of time spent on the job performing the function in question; (4) consequences of not requiring the person to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of persons who have held the job; (7) the current work experience of persons in similar jobs; (8) whether the reason the position exists is to perform the function; (9) whether there are a limited number of

In order to prevail on its defense of "direct threat," the defendant must prove the following elements by a preponderance of evidence:

> 1. The plaintiff posed a direct threat to the health and safety of himself or others in the workplace; and
>
> 2. Such direct threat could not be eliminated by reasonable accommodation.

*Id.*, Instruction No. 21B. "Direct threat" was defined as follows:

> A direct threat means a significant risk of substantial harm to the health or safety of the person or other persons that cannot be eliminated by reasonable accommodation. The determination that a direct threat exists must be based on an individualized assessment of the plaintiff's present ability to safely perform the essential functions of the job, based on a reasonable medical judgment that relied on the most current medical knowledge or the best available objective evidence.

*Id.*

At the jury instruction conference, outside the presence of the jury, the defendant argued for inclusion of the word "safely" in connection with the plaintiff's burden to prove he could perform the essential functions of his job. Filing No. 504 at 796–97, Transcript (Vol. IV). The following colloquy ensued:

> [Defendant's Counsel]: That goes to whether he's qualified when the job duties implicate the safety of others, absolutely.
>
> [Plaintiff's Counsel]: How can it be –
>
> THE COURT: It can't be an affirmative defense for you and a burden of proof for the plaintiff simultaneously. It's either an affirmative defense or it's not. And here's what I'm doing, I'm taking this safety thing out of it. I'm happy with [Instruction No.] 21. I'm happy with what we've got right now. That's what I'm going to do. I overrule your objection.

---

employees available among whom the performance of the function can be distributed; and (10) whether the function is highly specialized and the individual in the position was hired for his expertise or ability to perform the function.

*Id.*, Instruction No. 17. The jury was also told that "[n]o one factor is necessarily controlling." *Id.*

3

*Id.* at 797. The Court explained:

> And one of the essential functions is that he's got to do—he's got to do what you tell him to do and he's got to do it safely. I think that goes without saying. And it's not included in any standard instruction, safety or otherwise. But the direct defense on the issue of safety, it does include it, so I'm going to overrule your objection.

The jury was provided with a verdict form consisting of Special Interrogatories. Filing No. 485, Verdict. The jury was asked to indicate its finding in favor of either Baker or U.P. on each of the plaintiff's claims by answering Question Nos. 1–3. *Id.* at 1. The jury was then instructed "[i]f you find in favor of defendant Union Pacific on Question 1 and Question 2 and Question 3, have your foreperson sign and date this form because you have completed your deliberations on these claims." *Id.* The jury was instructed to proceed to consider Question No. 4, regarding U.P.'s affirmative defense, only if it found in favor of Baker in answer to Question Nos. 1, 2, or 3. *Id.* at 2. The jury found in favor of U.P. in answer to Questions 1, 2, and 3, but nevertheless proceeded to consider Question No. 4, again finding in favor of the Railroad. *Id.*

II. LAW

The denial of a post-trial motion for judgment as a matter of law is to be affirmed unless there was "'a complete absence of probative facts to support the conclusion reached' so that no reasonable juror could have found for the nonmoving party." *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 928 (8th Cir. 2010) (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997). The evidence must be viewed in the light most favorable to the nonmoving party while assuming as proven all facts its evidence tends to show, resolving all evidentiary conflicts in its favor, and affording it all reasonable inferences. *Id.* at 929.

Rule 59(e) motions for a new trial serve the limited function of correcting manifest

errors of law or fact or to present newly discovered evidence. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). "[M]otions for new trials are generally disfavored." *Williams v. Baum*, 48 F.4th 571, 573 (8th Cir. 2022). The district court's authority to grant a new trial should be exercised sparingly and with caution. *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). The key question is whether a new trial is necessary to prevent a "miscarriage of justice," which is a "stringent standard." *Williams*, 48 F.4th at 573. The jury's verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred. *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000). "In determining whether to grant a new trial, a district judge is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 465 (8th Cir. 2016). "'Where a party contends that an instruction was improperly given to the jury, reversal is appropriate only where the erroneously given instruction affects substantial rights.'" *Am. Fam. Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 355 (8th Cir. 2013)(quoting *Harrell v. Madison Cnty. Mississippi Mote Co.*, 370 F.3d 760, 762 (8th Cir. 2004); *see also* Fed. R. Civ. P. 61.

To establish an ADA violation, a plaintiff must show (1) that he or she was disabled within the meaning of the ADA; (2) that he or she was qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) a causal connection between an adverse employment action and the disability. *Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 545 (8th Cir. 2021). An individual who cannot safely perform the essential functions of his job because it poses a direct threat to himself or

others is not qualified. 42 U.S.C. § 12113(b). For an ADA failure-to-accommodate disability-discrimination claim, a plaintiff "must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). If these requirements are met, a defendant may still avoid liability for discrimination if it establishes the plaintiff was a "direct threat." *See* 42 U.S.C. § 12113(b). "Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r).

III. DISCUSSION

The Court first finds evidence in the record supports the jury's verdict in favor of the defendant on plaintiff's' claims for disparate treatment and failure to accommodate. There is evidence in the record, if credited, that Baker had suffered episodes of altered consciousness. Viewing the evidence in the light most favorable to the Railroad, and resolving all evidentiary conflicts in its favor, as well as affording all reasonable inferences, the court finds a reasonable jury could conclude that the plaintiff had not proved all the elements of his disparate treatment claims. There is conflicting evidence as to the qualifications for and duties of the job, as well as conflicting medical evidence as to the significance of those altered-consciousness episodes. It is the province of the jury to resolve those evidentiary conflicts.

Further, the Court finds there is no manifest injustice that would warrant a new trial. The Court correctly instructed the jury on the respective burdens of proof. The Court told the jury where to place the burdens and the Court must assume the jury followed those instructions. There were disputed issues of fact with respect to the essential functions of

6

the plaintiff's position, as well as disputed issues with respect to medical testimony. The jury was instructed to consider numerous factors to determine whether job functions were essential. A reasonable jury could conclude, based on its assessment of the medical evidence, that Baker had not proved he could perform the essential functions of the switchman/hostler position, with or without accommodation. Though several witnesses testified that an accommodation would have been available, the jury was free to disbelieve those witnesses.

Contrary to Baker's contentions, there is evidence that supports the jury's verdict in defendant's favor on the plaintiff's claims. Depending on its assessment of the evidence, a reasonable jury could conclude that Baker had not sustained his burden to prove he was qualified to perform the essential functions of his job or failed to prove the other elements of his claims. The jury could have found in favor of the defendant because it determined that the plaintiff had not proved but-for causation, or failed to prove he could perform the essential functions of his job, without any consideration of the direct threat defense. The Court properly instructed on the essential elements instructions for Baker's claims, rejecting the defendant's contention that safety should have been included as part of those instructions.

The notion of safety as a general proposition is different from and broader than safety in the context of the direct threat defense. The jury was instructed that it was permissible to rely on common sense in making their determination, and they were entitled to do so.[3] A reasonable jury could find that doing a job safely is implied in a job

---

[3] The Jury was instructed that "[y]ou may use reason and common sense to draw deductions from facts established by the evidence." Filing No., 478, Initial Jury Instructions, Instruction No. 1. In addition, the jury was told

7

description as a matter of common sense and life experience. The generic notion of performing a job safely could be subsumed within overall definitions of a task and does not need to be separately set out.

To prove a direct threat, a defendant must prove a *significant* risk of *substantial* harm. The direct threat defense requires consideration of the duration, nature and severity, likelihood and/or imminence of potential harm. The jury was clearly instructed that it was the defendant's burden to prove the direct threat defense. The jury did not necessarily have to conflate the concepts of safety as a component of job duties with the narrower concept of a direct threat in order to find in favor of the defendant on plaintiff's claims.

Any arguable inconsistency in the verdict caused by the jury's finding on the direct threat defense is of no consequence to this analysis. The jury's answer to Question No. 4 is surplusage and can be disregarded. Although the answer indicates the jury would have found in favor of the defendant in any event, the Court will not consider the issue. *See, e.g., Hohn v. BNSF Ry. Co.*, 707 F.3d 995, 1003 (8th Cir. 2013) (rejecting similar argument that the jury must have conflated the essential functions inquiry with the direct threat inquiry and finding sufficient evidence supported the jury's finding that the plaintiff could not perform the essential functions of his position). The Court finds the verdict is not against the weight of evidence and plaintiff's motion for a new trial should be denied. Accordingly,

---

"[Y]ou are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case."

Filing No. 479, Closing Jury Instructions, Instruction No. 36.

IT IS ORDERED that:

1. The parties' oral motions at trial for judgment as a matter of law are denied.

2. The plaintiff's motion for a new trial (Filing No. 491) is denied.

Dated this 16th day of May, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge